## GOOD v. NEW YORK, L. E. & W. R. Co.

### (Supreme Court, General Term, Fifth Department. October, 1888.)

1. RAILROAD COMPANIES—NEGLIGENCE—PROVINCE OF JURY.

Where loaded cars, sent onto a side track by a flying switch, go through an open switch onto a second siding, colliding with other cars, and killing the horses with which they were being drawn, and there is evidence to show that the loaded cars followed so closely that there was no time to close the switch, and also evidence of an attempt to warn the men in charge of the train, and as to whether the train was ahead of time, the question as to negligence on the part of the company is properly submitted to the jury.[1]

2. SAME—INSTRUCTION.

An instruction that the omission of the engineer to observe the warning given did not constitute negligence on the part of the company is properly refused.

3. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY.

It being contributory negligence to be drawing cars at train-time with horses on a side track onto which cars are regularly sent by a flying switch, a verdict against the railroad company for loss of the horses cannot be sustained where the evidence of the conductor, and two brakemen, and the record of the time of leaving the station before, as taken by both the head brakeman and engineer, show the train to have been then 15 minutes late, and another witness testifies that at 1:10, taking particular notice of the time in order to have a clear track, and, having first telegraphed to learn the position of the train, he left the station beyond, at which the train was due at 1:30, going up the track with a hand car, three-quarters of a mile, to the switch, and arriving at least 20 minutes before the collision, although two witnesses for plaintiff testify that the train was ahead of time, one of whom did not know the schedule time for the station beyond, but said a mill whistle blew for 1 o'clock as the train passed the switch, but he did not know that the mill followed railroad time, and the other said he did not look at the time, as he had no watch.

Appeal from Cattaraugus county court.

Action by Mary Good, administratrix, against the New York, Lake Erie & Western Railroad Company for injuries to horses. From a judgment entered

---

[1] In general, as to the provinces of court and jury in determining questions of negligence, see Barnes v. Sowden, (Pa.) 12 Atl. Rep. 804, and note; Bennett v. Insurance Co., (Minn.) 39 N. W. Rep. 488, and note; Quinn v. Railway Co., (S. C.) 7 S. E. Rep. 614, and note.

on a verdict, and from an order denying motion for new trial, defendant appeals.

*J. H. Stevens*, for appellant. *J. R. Jewell*, for respondent.

DWIGHT, J. The action was for the alleged negligent killing of four horses belonging to the plaintiff's intestate, on a siding which branched from the defendant's road at what is known as the "Bullis Switch," in the town of Carrolton, in Cattaraugus county. The plaintiff's intestate was employed by the Blaisdell Bros., owners of a mill situated on the siding, to draw cars to and from their mill. It was his duty to keep the siding clear from cars at such times as the defendant had occasion to use it—as they did nearly every day, on the arrival of a certain train—to send cars loaded with logs from the main track to the Bullis mills, situated beyond the Blaisdell mill, on the same siding. This was done by means of what is called a "flying switch," the loaded cars being cut out of the train, while in motion, and propelled by their own momentum down the siding onto which they are thrown. The plaintiff's intestate was familiar with this use of the siding, and knew the time at which the log train was accustomed to arrive. On the day of the accident his teams were engaged in moving a string of empty cars; when the log train arrived, and the flying switch was made. The empty cars had been drawn onto a branch siding near the Blaisdell mill. The loaded cars came down the main siding, and followed the empty cars, by means of the open switch, onto the branch, and the collision occurred, which resulted in the loss of the horses. It was the duty of the plaintiff's intestate and his men to close the switch behind them; but, as the evidence tended to show, the loaded cars followed the empty cars so closely as not to give time to close the switch after the passage of the latter. There was evidence which warranted the submission to the jury of the question of negligence on the part of the defendant's servants. The testimony of Dunn and Evens, called by the plaintiff, and of Rigdon, the station agent, and Rogers, the engineer, on the part of the defendant, in respect to the attempt to warn the men in charge of the train, and thus avert the accident, clearly presented a question of fact on that branch of the case. The request of the defendant's counsel for an instruction that the omission of the engineer to observe the warning given by Dunn did not constitute negligence on the part of the defendant was properly denied, and the question seems to have been fairly submitted to the jury. So, also, if the train was in advance of its schedule or usual time when the flying switch was made, that was a fact which the jury might consider as bearing upon the same question. They might well have found it negligence on the part of the defendant's servants to throw the loaded cars onto the siding at a time when men and teams might be there engaged in moving empty cars. But upon the other branch of the case the question whether the train was or was not in advance of its usual time became the principal question for the jury, and was so treated by the court. The fact of the time of the accident was important, and perhaps conclusive on the question of contributory negligence on the part of the plaintiff's intestate. It was manifestly negligence on his part to have his teams on the track at a time when the loaded cars were likely to be sent over it, and so the court, in substance, charged the jury. It is chiefly on the ground that the verdict was against the weight of evidence on this question that the appeal from the order denying the motion for a new trial is urged, on the argument here, and we think the objection to the verdict on that ground should have been sustained.

The evidence on the question of time can scarcely be said to be conflicting. The schedule time for the arrival of the train at Carrolton station was 1:30 P. M. The Bullis switch was between one-half and three-quarters of a mile south from the station, and the train was coming from the south. There was no schedule time for its arrival at the switch; but the conductor testified

that it took about 15 minutes to cut out the cars and do the switching, and that when the train arrived at Carrolton on time it must arrive at the switch at from 5 to 10 minutes after 1. Rigdon, the station agent at Carrolton, and Murray, the trackmaster, testify that at 10 minutes past 1, by the latter's watch, Rigdon left the station to go up to the switch. He took pains to ascertain the time in order that he might have a clear track for his hand car. He testifies that he had shortly before ascertained, on inquiry by the telegraph, that the train was then at Livingston station, 6 miles south. He says he arrived at the switch about 5 minutes after leaving Carrolton, and was there at least 20 minutes before the collision occurred. The conductor of the train, the engineer, the head brakeman, and two other brakemen testify that the train left Livingston at 1 o'clock, 15 minutes late, and the engineer says he made up 5 minutes of the time before reaching the switch, so that they were there 10 minutes behind time. The engineer and the head brakeman both kept records of the time, and both entered the time of departure from Livingston as 1 o'clock. Some question was made about an alteration of the entry made, by the head brakeman, at the time of arrival at Carrolton. This he explains by testifying that when he entered the time of leaving Livingston he anticipated the time of arrival at Carrolton, and entered it as 1:35, thinking they would be 10 minutes late, but that, having been delayed by the accident, and not arriving at Carrolton until 1:45, he then corrected the entry. We see nothing in the case to cast serious suspicion on the testimony of either of these six or seven witnesses, and the fact that they were all of them in the employ of the defendant, and some of them engaged in running the train in question, should not discredit their testimony unless it was substantially contradicted. This, as already intimated, we do not find to be the case. The only appearance of contradiction is found in the testimony of Dunn and Evens. Dunn testifies: "The train was ahead of time that day. Couldn't tell how much. About ten or fifteen minutes, any way,"—but testifies at the same time that he does not know at what time it was due at the station. He says "it was some something or one thirty something." He does not say that he had a watch, or consulted any time-piece, but he testifies that, as the train passed the switch, "the saw-mill whistle blew 1 o'clock. * * * I could not tell whether they had railroad time or not." The testimony of Evens was even less contradictory. In answer to the question, "Do you know what time it was when the train was in there?" he testified: "No. I did not look at the time. I did not have any time, and did not look. I should judge it was about 1 o'clock." This is all the evidence given on the part of the plaintiff in respect to the time at which the accident occurred. It seems to furnish no substantial contradiction to the evidence on that subject given on the part of the defendant. Such being the case, it must be held that the verdict was against the weight of evidence on one of the essential questions of fact submitted to the jury, and for that reason the judgment must be reversed, and a new trial granted. Costs to abide event. All concur.